[*November Term*, 1868.]

THE FRANKLIN INSURANCE COMPANY *v.* COBB AND ARMEL.

Where insurance was upon a flat-boat, loaded with hay, in the Ohio river, on its way to New Oreans: *Held*, that the defendants must show that, at the commencement of the voyage, the boat was reasonably fit for carrying down the Ohio and Mississippi rivers a cargo of hay, or they could not recover; and if, during the voyage, the boat became unseaworthy, by a peril of the rivers, and was not restored to a seaworthy condition with ordinary care, and the loss was caused in whole or in part thereby, the insured could not recover.

That a failure to comply with the provisions in the policy, that, in case of loss or misfortune, "the insured shall use all reasonable and proper means for the security, preservation, relief, and recovery of the property insured," does not avoid the policy, but does preclude recovery for any increase of the loss, caused by such failure to comply with the stipulation; and the other stipulations, that the property should be forwarded to its destination, and that it should not be sold except by order of court or public sale, are to receive a similar construction; and if the insured had failed to comply with them, it was incumbent on them to

show that the loss had not been increased thereby, as the insurer was not liable to pay more than would have been required to indemnify against the loss, if these stipulations had been strictly complied with.

*W. Y. Gholson* and *W. S. Scarborough,* for plaintiff.

*Lincoln, Smith & Warnock,* for defendants.

This was a trial before Taft, J., and a jury. The suit was brought for balance due on account of premiums. The de fendants set up, as a counter-claim, that there was due to them from the company the amount of a loss on a flat-boat load of hay, which had been insured by the plaintiff, and which had been damaged by being sunk in the river. Several difficult and important questions arose in applying the policy to the facts of the case, involving the construction of several clauses in the policy, and which are decided in the charge to the jury.

TAFT, J. This suit was brought by the plaintiff, the Franklin Insurance Company, to recover $1,928.54, an amount of unpaid premiums, on risks insured by the plaintiff under a contract policy, together with interest.

The defendants, admitting the claim of the plaintiff, assert, by way of counter-claim, a claim for an unpaid loss upon a flat-boat loaded with hay; and upon this counter-claim the contest has arisen, and the evidence has been introduced. If you find that the defendants are entitled to recover on their counter-claim, you will allow interest from sixty days after the preliminary proof of loss was presented to the company. That the preliminary proof has been made is not denied, and no question is made on that subject.

The first question you are to consider and determine from the evidence is, whether there has been a loss or misfortune under the policy by a peril of the river.

If you are satisfied that such a disaster did happen to the property as was contemplated by the policy, then you are

to consider how much, if anything, the defendants, who are the insured in the present case, are entitled to recover therefor under their counter-claim.

There are several stipulations or conditions, express or implied, in the policy, which have been the subject of discussion, and upon which it is now necessary that I should give you the construction that is to govern you in your deliberations. Some of these conditions or stipulations relate the risk assumed, and if not complied with, defeat all claim under the policy.

Such is the implied condition, or warranty, that the boat upon which the hay was shipped was at the commencement of the voyage seaworthy; that is, fit for the service in which she was employed—able to withstand the ordinary perils of the river. She is not required to be able to withstand extraordinary perils, for it is the risk of those, which the insurers assume. But she must be reasonably fit for carrying down the Ohio and Mississippi rivers a cargo of hay. If she was not seaworthy in that sense, at the commencement of the voyage, the policy was void. The policy of insurance presupposes a boat fit for the service, and if such were not its character, there was no contract, and the policy did not attach at all.

If, however, the vessel was seaworthy when the voyage commenced, and became unseaworthy by a peril of the river afterward, and was repaired and made seaworthy with reasonable and ordinary care and diligence, so that it was seaworthy when the disaster occurred, there is no ground of defense on that account; or if she became unseaworthy, and there was no opportunity to repair and make her seaworthy before the disaster, there would not be a defense on that ground, though the loss were caused by such unseaworthiness; and if she was seaworthy when the voyage commenced, and became unseaworthy afterward, and yet said unseaworthiness did not cause or contribute to the loss, it would be no defense.

But there is another class of stipulations which relate to the conduct of the insured, and their agents, after the happening of a disaster by the perils of the river.   The construction of these stipulations in the policy upon which the counter-claim of the defendants is founded, is a subject of controversy in the present case, and involves questions of serious difficulty.

Such is the provision : " That in case of loss or misfortune resulting from any peril insured against, it shall be the duty of the parties insured, their factors, servants, and assigns, to use all reasonable and proper means for the security, preservation, relief, and recovery of the property insured."

It has been supposed, in view of the force that has been given to express stipulations in policies relating to the risk, that this stipulation also should be considered a warranty, which, if broken, would make void the policy and forfeit all right of recovery under it.   But under the authority of the Supreme Court of Ohio, as expressed in the case of *May* v. *The Cincinnati Insurance Company*, 20 Ohio, 229, as well as of decisions of the courts of other States, in regard to the same, or similar provisions, I must hold that such is not the operation of this stipulation.   This clause in the policy defines the duty of the assured, and their agents, in regard to the security, preservation, and recovery of the property after the disaster; and the question is presented to you, therefore, whether such loss or misfortune happened, and whether, after it did happen, the defendants, and their agents in charge of the insured property, used all reasonable and proper means for the security, preservation, relief, and recovery of the property insured.   This is a question addressed to your sound judgment, in view of all the circumstances and all the evidence.   Place yourselves in the position of the insured, and their agents in charge of the property at the time, and decide whether that provision has been fairly kept.   The question is not whether the best

plan was adopted to save the property, or whether all was done that might possibly have been .done by men of greater skill and more determined perseverance, but whether every reasonable and proper means was used."

I do not mean that any faint and wavering efforts would suffice to relieve the defendants from responsibility under this provision.    There must be a use of all " reasonable and proper means," by which I understand such means as " a prudent, uninsured owner " would be expected to use under like circumstances.    If you find for the defendants in this point, that all reasonable and proper means were used to preserve and recover the property, then the defendants will be entitled to recover, on their counter-claim, the amount of their loss, unless their recovery is prevented or limited by a violation, on the part of the defendants, of some other stipulation in the policy.    But if the insured failed to perform their duty under this provision in the policy, then any loss that has been caused by such failure they must bear themselves.    If, by failing to perform their whole duty under this provision, the loss has been made greater than it would have been with a full performance of that stipulation, the company are not liable for such excess; but the policy would not be forfeited, nor would the insured be prevented from recovering the actual loss by the perils of the river, independent of, and not including the increase of loss caused by the neglect to use all reasonable and proper means to recover and preserve the property.    As to the remaining stipulations in the policy, relating to the disposition of the property after the disaster, I am of opinion that the violation of them must be attended with consequences, in kind, like those which attend the violation of the stipulation I have been considering.    The effect of a failure to keep that stipulation has been judicially determined to be as I have already stated, so far as the question I am now considering is concerned; and I feel bound to apply a similar rule to the violation of the stipulation, that in case of disaster at any place within the United States, it shall be the duty of

the master, or agent of the assured, to forward the property saved or recovered to the port of destination without unnecessary delay. So that if the disaster happened, and the property was not so forwarded, the risk of loss by not forwarding it rested upon the insured, and if any loss or damage, or any increased loss or damage, resulted from the nonfulfillment of the stipulation of the policy in that particular, the defendants, and not the insurers, must bear it. If, on the other hand, the evidence shows that no damage or loss, or increase of damages or loss, resulted from taking that course, then the amount of the recovery will not be affected by it.

The stipulation, "that the property insured shall not be sold, except by order of court, at any other place than at the port of destination, without express authority from the insurers, or their agents," is subject to a like construction; and if it was not complied with, the risk of such non-compliance was assumed by the insured, but such assumption did not operate as a forfeiture of all rights to recover for such loss as might have happened from the perils of the river.

So, also, the " proviso that the articles of cargo which may be in a damaged and perishing condition, so as not to admit of delay, may be sold at public sale, at the nearest convenient market, for account and benefit of whom it may concern," furnishes a rule by which the amount of damage could be ascertained; and if the insured did not comply with that provision, they assume the risk of the private sale, and of proving that no loss happened thereby, leaving the insurers responsible in no case beyond the amount of loss which could have happened if the course prescribed by the terms of the policy had been pursued.

This policy also contains a stipulation, " that in case of partial loss to this kind of property, the loss shall be ascertained by a separation and sale of the portion only of the contents of the packages so damaged, so far as is practicable, and not otherwise." It is claimed by the plaintiff that this was a case of partial loss, and that the insured failed to

Franklin Ins. Co. v. Cobb & Armel.

ascertain the loss in the present case, according to said stipulation, but did sell at private sale the entire property; and it is claimed that on that account no recovery can be had for such partial loss.

There is no question made in this case concerning preliminary proof. And I charge you that if it was practicable to have separated and sold the portion of the hay which was damaged, from the undamaged hay, and to have forwarded the undamaged hay to New Orleans, the plaintiffs were entitled, under this policy, to have had it so done; and the company is not to be made liable for any damages or increase of damages which might have been avoided by the forwarding of the undamaged portion of the hay to the port of destination. The theory upon which I explain these clauses is that they are inserted in the policy to protect the insurers from imposition on the part of the insured, by unnecessarily giving up the voyage and selling out at a disadvantage, and thereby increasing the loss or damage, and a rule is agreed upon, which, if followed, will leave no ground of complaint by the insurers, though it might not prove in every instance the best; but the insurers are entitled to be protected from any and all loss or damage beyond what would have resulted from a strict compliance with these stipulalations. If the loss has been made greater by such non-compliance, for such excess the insurer is not liable; so that the risk of deviating from these clauses is upon the insured, but they do not, by such deviation, forfeit their right to recover such loss as they have actually sustained from the perils of the river. The burden of proof, however, is upon the defendants to show that the amount of loss claimed could not have been avoided by a strict compliance with the stipulations in this policy.

The jury returned a verdict for defendants for $945.